**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**CGB DIVERSIFIED SERVICES, INC.,**

      **Plaintiff,**

      **v.**

**KANE ADAMS,**

      **Defendant.**

**Case No. 2:20-CV-2061-HLT-KGG**

## MEMORANDUM AND ORDER

Plaintiff CGB Diversified Services ("CGB") has sued its former employee, Defendant Kane Adams, for breach of contract, misappropriation of trade secrets under state and federal law, and breach of fiduciary duty, after Adams resigned from CGB and went to work for a competitor. Adams moves to dismiss under Rule 12(b)(6). For the reasons discussed below, the Court grants Adams's motion and dismisses CGB's federal misappropriation claim (Count II). In light of that dismissal, the Court declines to exercise supplemental jurisdiction over CGB's remaining state-law claims (Counts I, III, and IV) and dismisses those claims without prejudice as well.

## I.      BACKGROUND[1]

CGB is in the business of crop insurance. Doc. 1 at ¶ 11. Adams worked for CGB for more than two years, and during that time he was entrusted with CGB's confidential and proprietary information and trade secrets. *Id.* at ¶¶ 2, 20-21. Adams was the West District Marketing Director, which meant he was responsible for "developing relationships with independent agents, marketing and promoting [CGB's] expertise in crop insurance and grain marketing." *Id.* at ¶ 20. In that role,

---

[1] The following facts are taken from the well-pleaded allegations of the complaint and, consistent with the standards for evaluating motions to dismiss under Rule 12(b)(6), the Court assumes the truth of these facts for purposes of analyzing Adams's motion to dismiss.

he worked closely with customers and had access to CGB's customer information and profiles, as well as strategies for pricing, marketing, sales, and customer and agent service. *Id.* at ¶¶ 20, 22. CGB restricts access to and protects this information. *Id.* at ¶ 21.

As part of his employment, CGB issued Adams a laptop. *Id.* at ¶ 23. Adams also signed an agreement to not use or disclose CGB's confidential information. *Id.* at ¶¶ 27-28. The agreement prohibited Adams from interfering with, or soliciting, hiring, or encouraging current CGB employees to leave their employment for up to one year after separation from CGB. *Id.* at ¶ 29.

Adams and three other CGB employees resigned within minutes of each other on January 24, 2020. *Id.* at ¶ 45. In the weeks leading up to his resignation, Adams "accessed a wide variety and unusually large number of CGB documents" containing confidential information and trade secrets, including customer information. *Id.* at ¶ 33. The complaint alleges that on eight different dates before his resignation, Adams attached an external memory device to his work laptop and accessed confidential information and trade secrets. *Id.* at ¶¶ 34-42.

CGB contends that, "[o]n information and belief," Adams used CGB's trade secrets for the benefit of himself and his new employer, which is a competitor of CGB. *Id.* at ¶¶ 2, 43, 47, 49. Similarly, "[o]n information and belief," CGB alleges Adams engaged in actions against CGB's interest while he was still employed. *Id.* at ¶ 44. "On information and belief," CGB alleges that Adams intends to use its trade secrets and confidential information and "has shown that he intends to harm [CGB's] relationship with its customers." *Id.* at ¶¶ 50-53.

CGB asserts four counts against Adams. Count I is for breach of his employment agreement. *Id.* at ¶¶ 54-60. Count II and Count III are for misappropriation of trade secrets under federal law and Kansas law, respectively. *Id.* at ¶¶ 61-83. Count IV is for breach of fiduciary duty based on Adams allegedly conspiring with other employees to go work for a competitor. *Id.* at ¶¶

84-90. CGB seeks injunctive relief, damages (including exemplary damages for Adams's "willful behavior"), and costs and fees.

## II.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 679.

## III.    ANALYSIS

### A.    CGB has failed to state a claim for misappropriation under the Defend Trade Secrets Act.

The Court begins with CGB's misappropriation claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"),[2] as that is the only claim arising under federal law, and thus the jurisdictional hook in this case. A private cause of action for misappropriation of a trade secret requires "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret

---

[2]    The complaint cites 18 U.S.C. § 1832, which is a criminal provision. Doc. 1 at 11. But it is § 1836 that authorizes a private civil action for misappropriation of trade secrets.

without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means." *Freebird Commc'ns, Inc. Profit Sharing Plan v. Roberts*, 2019 WL 5964583, at *4 (D. Kan. 2019). CGB's response clarifies that it is only alleging that Adams "took and used" trade secrets, not that he wrongfully acquired them. Doc. 22 at 5 n.2; *see also* 18 U.S.C. § 1839(5) (defining "misappropriation" as either "acquisition . . . by improper means" or "disclosure or use . . .without express or implied consent").

The sum of CGB's misappropriation claim is that Adams, while he was a CGB employee with access to trade secrets,[3] attached external memory devices to his work laptop and accessed files that contained trade secrets. Shortly after, he resigned from CGB and went to work for a competitor, though the nature and duties of his new job are not alleged. Based on these facts, and on "information and belief," CGB alleges that Adams has misappropriated and continues to misappropriate CGB's trade secrets. The complaint includes no facts about how Adams has allegedly done this, or any facts that form CGB's "information and belief."

CGB argues that all it must do is put Adams on notice that it is alleging he misappropriated trade secrets. Doc. 22 at 5. The Court disagrees. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555). In other words, just alleging that Adams "misappropriated" trade secrets does not plausibly state a claim for misappropriation of trade secrets. CGB plainly admits that it does not have information about Adams's "post-departure activities," but it nonetheless believes they include misappropriation "on information and belief." Doc. 22 at 6. But

---

[3] As Adams does, the Court will assume without deciding for purposes of this motion that CGB has adequately pleaded the existence of trade secrets. *See* Doc. 17 at 7 n.4.

speculation and conclusory statements are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 679. Therefore, the Court cannot and does not simply presume that CGB's suspicions about Adams are correct.

Nor is CGB entitled to an inference of misappropriation based on its allegation that Adams attached external memory devices to his work laptop and accessed sensitive files. The fact that Adams accessed files that he apparently had access to as part of his job, *see* Doc. 1 at ¶¶ 20-25, before he resigned does not give rise to a reasonable inference of misappropriation. CGB states in its response that Adams "did not return, upon his departure, each of the external memory devices that he connected to his work computer." Doc. 22 at 5-6. But as Adams points out, the complaint does not include any allegations that Adams was asked to or otherwise failed to return any external memory devices. *See* Doc. 23 at 6; *see also* Doc. 1 at ¶¶ 34-42. The complaint does not even allege that Adams <u>transferred</u> sensitive files to any of those devices—only that he <u>accessed</u> the files. And, even if CGB alleged transferring, possessing files is not enough to state a claim of misappropriation. *See Camick v. Holladay*, 758 F. App'x 640, 645 (10th Cir. 2018) (upholding a Rule 12(b)(6) dismissal because "an allegation that a defendant merely continues to possess a trade secret is not an allegation the defendant acquired, disclosed, or used a trade secret—the DTSA's definitions of misappropriation").

CGB finally argues that it has properly alleged that Adams will "inevitably" disclose its trade secrets given that his new employer is a direct competitor of CGB, and thus it has adequately pleaded misappropriation under the "inevitable disclosure doctrine."[4] Doc. 22 at 5-6. But as CGB

---

[4] "The inevitable disclosure doctrine is a theory of relief for claims of misappropriation of trade secrets when an employee's new employment will inevitably lead him to rely on his former employer's trade secrets." *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1203, 1208 (D. Kan. 2006). As Adams notes, it is unclear whether courts in Kansas have adopted this doctrine. *See id.* at 1209. As explained below, because the complaint includes no facts that could support this theory, the Court need not address whether it is a viable theory in Kansas, or how it would impact CGB's other claims for breach of contract and misappropriation under state law.

acknowledges, *see id.* at 6, that theory requires facts about Adams's new position—something the complaint is entirely silent on.[5] Simply taking a new job with a competitor[6] does not plausibly suggest misappropriation, inevitably or otherwise.

In sum, all CGB alleges in the complaint is that Adams had access to trade secrets as part of his employment with CGB, that he accessed that information, and that he went to work for a competitor. To infer wrongdoing from those facts would throw the plausibility standard out the window. Accordingly, the Court finds that CGB has failed to state a claim under the DTSA and Count II is dismissed without prejudice.[7]

### B. The Court declines to exercise supplemental jurisdiction over CGB's remaining state-law claims.

CGB's remaining claims arise under state law: breach of contract, misappropriation under the Kansas Uniform Trade Secrets Act, K.S.A. § 60-3320, et seq., and breach of fiduciary duties. A court has discretion to exercise supplemental jurisdiction over state-law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding whether to exercise supplemental jurisdiction over state-law claims, a court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been

---

[5]  CGB's response includes Adams's new job title, but that was not included in the complaint. Nor is any information provided at all about Adams's duties at his new job compared to his last or the degree of competition between the employers—something that distinguishes this case from the one relied on by CGB for application of the inevitable-disclosure doctrine. *See Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at *6 (N.D. Ill. 2017) ("On the second factor, Molon has also adequately pled that Desai's position with Nidec is similar to his former position at Molon.").

[6]  There are no allegations that Adams violated his employment agreement in simply going to work for a competitor.

[7]  Adams argues that CGB's claims should be dismissed <u>with</u> prejudice. The Court believes, however, that dismissal <u>without</u> prejudice is more appropriate under the circumstances of this case.

dismissed. *See, e.g.*, *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist. 260*, 2011 WL 5149257, at *3 (D. Kan. 2011). Here, the proceedings are at an early stage and the remaining causes of action—following dismissal of CGB's DTSA claim—are purely state-law claims. Considering the various factors, therefore, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.[8] These claims are dismissed without prejudice for lack of jurisdiction.

## IV.     CONCLUSION

THE COURT THEREFORE ORDERS that Adams's motion to dismiss (Doc. 16) is GRANTED. CGB's misappropriation claim under the DTSA (Count II) is DISMISSED WITHOUT PREJUDICE for failure to state a claim. The Court declines to exercise supplemental jurisdiction over CGB's remaining state-law claims (Counts I, III, and IV), and those claims are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.[9]

IT IS SO ORDERED.

Dated: April 13, 2020                              /s/ *Holly L. Teeter*
                                                                HOLLY L. TEETER
                                                                UNITED STATES DISTRICT JUDGE

---

[8]  Because the Court dismisses the state-law claims for lack of subject-matter jurisdiction, it need not address Adams's substantive arguments for dismissal of those claims under Rule 12(b)(6). Nevertheless, the Court notes serious concerns regarding whether CGB has adequately pleaded those claims. For example, CGB's state-law misappropriation claim is nearly identical to the federal claim and likely suffers the same deficiencies. *See Freebird*, 2019 WL 5964583, at *4. As to CGB's breach-of-contract and breach-of-fiduciary-duty claims, the Court questions whether any breach has been adequately pleaded.

[9]  CGB includes a footnote in its response requesting that the Court grant it leave to amend its complaint if any portion of the motion to dismiss is granted. Because it is raised in a footnote, this request is not properly before the Court. And, even if it was, the Court would decline this request. The Court will not ordinarily grant leave to amend in absence of a formal motion because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014). CGB's footnote request also fails to comply with D. Kan. Rule 15.1(a), which in and of itself is sufficient grounds to deny the request.